1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
11  PULSE ENTERTAINMENT CORP.,        )    CASE NO. CV 14-4732-SVW-MRW
                                      )
12          Plaintiffs,               )    ORDER GRANTING DEFENDANTS'
                                      )    MOTION TO DISMISS FIRST
13          v.                        )    AMENDED COMPLAINT
                                      )    [14]
14  ALKIVIADES DAVID a/k/a ALKI       )
    DAVID; HOLOGRAM USA, INC.;        )
15  FILMON.COM, INC., and DOES 1–10.  )
                                      )
16          Defendants.               )
                                      )
17  ─────────────────────────────────)

18  I.    INTRODUCTION

19          This action arises from a dispute surrounding the lifelike animation of Michael Jackson

20  (the "Michael Jackson Animation") that appeared during the 2014 Billboard Music Awards and

21  a related CNN interview segment.  On August 4, 2014, plaintiff Pulse Entertainment Corp.

22  ("Pulse") filed its First Amended Complaint ("FAC") against defendants Alkiviades David

23  ("David"), Hologram USA, Inc. ("Hologram"), Filmon.com, Inc. ("Filmon.com"), and Does

24  1–10 (collectively, "Defendants").  Pulse asserts that Defendants' representations regarding the

25  Michael Jackson Animation constitute (1) reverse passing off in violation of 15 U.S.C. §

26  1125(a)(1)(A) and (2) false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

27          Presently before the Court is Defendants' motion to dismiss Pulse's First Amended

28  Complaint.  (Dkt. 14.)  For the reasons set forth below, the Court GRANTS the motion as to both

1  claims.

2  **II.     FACTUAL BACKGROUND**

3         The Billboard Music Awards held on May 18, 2014, featured a lifelike animation of

4  Michael Jackson performing a previously unreleased song (the "Michael Jackson Animation").

5  (FAC ¶ 1).  Pulse alleges that its team of animators and technicians developed and produced the

6  Michael Jackson Animation over the course of eight months.  (FAC ¶ 2).  Pulse asserts that the

7  presentation of the Michael Jackson Animation was meant to coincide with and garner publicity

8  for the new company's launch.  (FAC ¶ 18).

9         David owns Hologram USA—Pulse's competitor in the field of human animation.  (FAC

10  ¶ 2).  Pulse claims that David and the other Defendants had no involvement with the creation of

11  the Michael Jackson Animation.  (FAC ¶ 2).  Pulse further asserts that Defendants do not own or

12  control the animation technology used to create the Michael Jackson Animation.  (FAC ¶ 13).

13        On May 15, 2014, Hologram sued Pulse and several other defendants in the District of

14  Nevada.  (Defs.' Mot. to Dismiss, 4).  Hologram asserted that Pulse and the other defendants in

15  that action infringed Hologram's patents in creating the Michael Jackson Animation.  (Defs.'

16  Mot. to Dismiss, 3–4).  As of August 18, 2014, Pulse had not yet filed an answer or

17  counterclaims in that action.  (Defs.' Mot. to Dismiss, 4).

18        On approximately May 19, 2014, defendant David gave an interview that was broadcast on

19  on CNN.  (FAC ¶ 18).  The interview aired with the caption "MICHAEL JACKSON

20  HOLOGRAM: HOW'D THEY DO IT?  Company behind hologram gives CNN demonstration."

21  (FAC ¶ 14).  In the interview, David allegedly represented that he and his company (Hologram)

22  created and produced the Michael Jackson Animation and the underlying animation techniques

23  and technology.  (FAC ¶ 14).  David also made several other allegedly misleading statements,

24  including statements in which he used "we" while describing the process employed to create the

25  Michael Jackson Animation.  (FAC ¶¶ 14–15).  During the segment, while the Michael Jackson

26  Animation played on screen, the interviewer stated that "[t]his MJ likeness used at the Billboard

27  Music Awards was created by Hologram USA."  (FAC ¶ 14).

28        CNN took the interview segment down from its website after it was informed that neither

2

David nor Hologram was involved in the creation of the Michael Jackson Animation. (FAC ¶¶ 2, 16). However, David allegedly republished the segment on his companies' websites and on his Twitter account. (FAC ¶ 16).

## III. ANALYSIS

### A. Legal Standard for Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. Fed. R. Civ. Proc. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Allegations in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes of the motion." *Odom v. Microsoft Corp*, 486 F.3d 541, 545 (9th Cir. 2007).

If a court dismisses the complaint, it will grant leave to amend unless futile. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### B. Pulse's Reverse Passing Off Claim

Pulse asserts a claim for reverse passing off under § 43(a) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

#### 1. Legal Standard

Section 43(a) of the Lanham Act prohibits using false designations of origin in commerce in connection with any goods or services. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003); 15 U.S.C. § 1125(a)(1)(A). The Supreme Court has held that this section encompasses reverse passing off. *Dastar*, 539 U.S. at 30. Reverse passing off occurs "expressly when the wrongdoer removes the name or trademark on another party's product and sells that product under a name chosen by the wrongdoer. Implied reverse passing off occurs

3

when the wrongdoer simply removes or otherwise obliterates the name of the manufacturer or source and sells the product in an unbranded state." *Shaw v. Lindheim*, 919 F.2d 1353, 1364 (9th Cir. 1990) (quoting *Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir. 1981) (internal quotation marks omitted). Section 43(A) only prohibits false designations of "the producer of the tangible goods that are offered for sale[.]" *Dastar*, 539 U.S. at 37. It does not prohibit false designations of "the author of any idea, concept, or communication embodied in those goods. *Id.*

### 2. Application

Pulse asserts that Defendants "publicly stated that David and Hologram USA are the source, origin, and owners of the Michael Jackson Animation." (FAC ¶ 23). Pulse does not assert that Defendants marketed as their own a physical embodiment of the Michael Jackson Animation that was created by Pulse. As Pulse's complaint makes clear, the Michael Jackson Animation "exists wholly separate and apart from any projection technique. . . [It] is not dependent on a method of projection, and it can be displayed in a variety of ways. In that regard, it may be likened to a cartoon animation or a CG character in a feature film or television program." (FAC ¶ 13). Thus, the thrust of Pulse's complaint is that Defendants falsely designated themselves as the authors of an intangible communication.[1] This is precisely the sort of claim foreclosed by *Dastar*. *See Dastar*, 539 U.S. at 37–38 (rejecting plaintiffs' reverse passing off claim premised on defendant's failure to attribute the content used to create defendant's video series to plaintiffs); *Williams v. UMG Recordings, Inc.*, 281 F. Supp. 2d 1177, 1183 (C.D. Cal. 2003) (applying *Dastar* and holding that although "Plaintiff would have a [reverse passing off] claim if Defendants purchased copies of Plaintiff's goods (i.e. the film) and repackaged them as their own[,]" Plaintiff could not assert a claim for the failure to credit "his authorship and direction embodied in that film").

For the aforementioned reasons, Pulse fails to state a claim for reverse passing off under § 43(a) of the Lanham Act. Defendants' motion to dismiss under Rule 12(b)(6) is therefore

---

[1]  Though the FAC makes some reference to David's claims of ownership of the technology underlying the animation, Plaintiff fails to specify what technology is at issue or who owns it. *See* (FAC ¶ 14). Moreover, the thrust of Plaintiffs' argument is that Defendants improperly claimed to have created the Michael Jackson Animation, not the technologies underlying it.

1   GRANTED as to this claim.

2        Because the Court cannot say that amendment would be entirely futile, Pulse is granted

3   leave to amend.  Nevertheless, the Court cautions Pulse that it is skeptical about the viability of a

4   reverse passing off claim based on Defendants claiming to be the creators of the Michael Jackson

5   Animation.[2]

6        **C.    Pulse's False Advertising Claim**

7        Pulse also asserts a false advertising claim under § 43(a) of the Lanham Act.  15 U.S.C. §

8   1125(a)(1)(B).

9              1.    Legal Standard

10       The Lanham Act prohibits false advertisements.  15 U.S.C. § 1125(a)(1)(B).  To establish

11   a Lanham Act false advertising claim, a plaintiff must show: "(1) the defendant made a false

12   statement either about the plaintiff's or its own product; (2) the statement was made in [a]

13   commercial advertisement or promotion; (3) the statement actually deceived or had the tendency

14   to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant

15   caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely

16   to be injured as a result of the false statement, either by direct diversion of sales from itself to the

17   defendant, or by a lessening of goodwill associated with the plaintiff's product."  *Newcal Indus.,*

18   *Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) (quoting *Jarrow Formulas, Inc.*

19   *v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002).  A statement is material if it is likely to

20   influence consumers' purchasing decision.  *EcoDisc Tech. AG v. DVD Format/Logo Licensing*

21   *Corp.*, 711 F. Supp. 2d 1074, 1084 (C.D. Cal. 2010).

22       A statement of fact is a commercial advertisement or promotion if it is: "(1) commercial

23   speech; (2) [made] by the defendant who is in commercial competition with the plaintiff; (3) for

24

25   [2]  Pulse's reliance on *Landrau v. Solis Betancourt*, 554 F. Supp. 2d 102 (D. Puerto Rico 2007), is
     misplaced.  *Landrau* is distinguishable because the plaintiffs there alleged that the false
26   designation of a house's architect in a magazine would divert consumers from plaintiff's
     architectural services to defendants' services.  *Id.* at 110.  Here Pulse asserts only that the
27   misrepresentation diverted media attention from itself to defendants.  (FAC ¶ 18).  More
     fundamentally, the Court is not persuaded by *Landrau*'s reasoning.  *Landrau* fails to mention
28   *Dastar* and relies instead on pre-*Dastar* authority to support its conclusion that plaintiff stated a
     claim for reverse passing off.  *See id.*

the purpose of influencing consumers to buy defendant's goods or services. . . [and] (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Id.* at 1054 (quoting *Coastal Abstract Service, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999). Courts consider three factors in deciding whether a statement is commercial speech: "(1) whether the statements are in a typical advertising format; (2) whether the statements refer to a commercial product; and (3) whether the defendant had an economic or commercial motivation for making the statements." *Nat'l Servs. Grp., Inc. v. Painting & Decorating Contractors of Am., Inc.*, No. SACV06-563CJC(ANX), 2006 WL 2035465, at * 5 (C.D. Cal. July 18, 2006) (quoting *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1111 (C.D. Cal. 2004)); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–68 (1983).

Claims of fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b). Where a claim alleges a course of fraudulent conduct as its basis, the claim is said to be "grounded in fraud" and must satisfy Rule 9(b). *Vess v. Ciba-Giegy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003). While the Ninth Circuit has not yet decided the issue, other courts have found that Lanham Act false advertising claims are grounded in fraud and thus subject to Rule 9. *See, e.g.*, *EcoDisc Tech. AG*, 711 F. Supp. 2d at 1085 (applying Rule 9 to a Lanham Act false advertising claim); *LT Int'l Ltd. v. Shuffle Master, Inc.*, No. 2:12-CV-1216-JAD-GWF, 2014 WL 1248270, at *4–5 (D. Nev. Mar. 26, 2014) (same).

To satisfy Rule 9(b), the complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *In re GlenFed Inc. Sec. Litig.*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994) (en banc). In all, the plaintiff must provide a "substantial amount of particularized information about the plaintiff's claim in order to enable [the defendant] to understand it and effectively prepare a response pleading and an overall defense of the actions." 5A Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1296 (3d ed. 2004).

2. Application

6

Pulse's false advertising claim is based on Defendants' alleged misrepresentation that they created the Michael Jackson Animation. This claim is grounded in fraud and is thus subject to Rule 9(b)'s heightened pleading standard. *See Lt Int'l Ltd.*, 2014 WL 1248270, at *4–5.

Pulse alleges that on or around May 19, 2014, David "launched a false media campaign," including giving an interview that was broadcast on CNN with the caption: "MICHAEL JACKSON HOLOGRAM: HOW'D THEY DO IT? Company behind hologram gives CNN demonstration." (FAC ¶ 14). Without specifying David's exact statements, Pulse alleges that on the segment David falsely took credit for the Michael Jackson Animation. (*Id.*). Pulse also identifies other purportedly misleading statements made by David: (1) "What you saw at the Billboard, you saw a digital head connected to an actor. We capture the body and the head in real time. And, we have the sync marks and we can attach the two together[,]" (*id.*); (2) "What you saw at the Billboard was 'Super Michael.' You saw Michael beyond the controversy, beyond the problems that he faced in his real life[,]" (*id.*); (3) that the animation could be adapted for "education, military, politics—it can apply—be applied across the board[,] (FAC ¶ 15); and (4) that "there is no end to how you can apply this, all we really need to do is apply our imagination[,]" (*id.*). Pulse also complains that the interviewer stated that "[t]his MJ likeness used at the Billboard Music Awards was created by Hologram USA." (FAC ¶ 14). Pulse asserts that some time after CNN removed the segment from its website, Defendants republished the segment, with the complained-of caption and interviewer's statements, on their websites and on David's Twitter account. (FAC ¶ 16).

To the extent that Pulse's false advertising claim relies on the original CNN broadcast, Pulses fail to state a claim for relief and fails to satisfy Rule 9(b). Most of the obviously false and deceptive statements were made by CNN (or its interviewer) rather than by Defendants. Even though Defendants participated in the interview, Pulse fails to plead sufficient facts to show that Defendants either knew of the false caption and interviewer's statement before the broadcast aired or otherwise participated in their creation. The only specific statements attributed to Defendant were not materially deceptive. These statements related only to the methods used to create the Michael Jackson Animation, descriptions of the Animation, and

statements relating to the potential uses for the technology used to create the Animation.  With the exception of the last category, these statements are unlikely to influence purchasers' decisions.  Moreover, there is no evidence that the statements relating to the technology's potential uses are false.  Finally, Pulse fails to specify the particular manner in which each of these statements is deceptive.  Pulse also fails to assert when the broadcast aired to the public.  Accordingly, to the extent that Pulse's false advertising claim relies on the original CNN broadcast, it fails under Rules 12(b)(6) and 9(b).[3]

To the extent that Pulse's false advertising claim relies on Defendants' republication of the interview segment, it comes closer to meeting the mark.  By reposting the segment with the interviewer's statement and caption, Defendants arguably adopted these false statements.  Nevertheless, this claim fails under Rule 9.  Pulse does not specify exactly when the segment was reposted, all of the websites to which it was reposted, for how long it was made available, or provide any other contextual facts that would allow Defendants to prepare a responsive pleading.  Thus, to the extent that Pulse's false advertising claim relies on Defendants' republication of the interview segment, it fails to satisfy Rule 9.

For the aforementioned reasons, Pulse's false advertising claim is DISMISSED under Rule 9(b) and Rule 12(b)(6).  Because amendment would not be futile, Pulse is granted leave to amend.[4]

### D.    Compulsory Counterclaims Under Rule 13(a)

Defendants assert that Pulse's claims are compulsory counterclaims that should have

---

[3]  Pulse also failed to show that CNN's initial broadcast of the interview segment is a commercial advertisement or promotion.  David's statements were made in an ordinary interview format on a national news program regarding an event that received widespread publicity.  There are no facts alleged indicating that Defendants had an economic motivation or that the statements were intended to influence consumers to buy defendants' goods or services.  *See Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003) (holding that statements about fraud in the art world made in an art magazine in response to an unsolicited inquiry were not commercial speech); *Nat'l Servs. Grp.*, 2006 WL 2035465, at *5–6 (holding that statements in an article discussing issues affecting industry and not promoting defendant's specific services were not commercial speech).

[4]  In light of the Court's holding that the entire complaint should be dismissed, the Court need not address Defendants' argument that Pulse fails to plead its alter ego claim against Filmon with the requisite particularity.

1  been, and still can be, brought in the patent infringement action related to the Michael Jackson

2  Animation that is currently pending in the District of Nevada.

3          1.   Legal Standard

4       A pleading must state any counterclaim that the pleader has against an opposing party

5  that: "(A) arises out of the transaction or occurrence that is the subject matter of the opposing

6  party's claim; and (B) does not require adding another party over whom the court cannot acquire

7  jurisdiction." Fed. R. Civ. P. 13(a)(1). To determine whether a counterclaim is compulsory, the

8  Ninth Circuit applies the "logical relationship" test. *Mattel, Inc. v. MGA Entertainment, Inc.* 705

9  F.3d 1108, 1110 (9th Cir. 2013). "A logical relationship exists when the counterclaim arises

10  from the same aggregate set of operative facts as the initial claim, in that the same operative facts

11  serve as the basis of both claims or the aggregate core of facts upon which the claim rests

12  activates additional legal rights otherwise dormant in the defendant." *Id.* (quoting *In re Pegasus*

13  *Gold Corp.*, 394 F.3d 1189, 1196 (9th Cir. 2005).

14          2.   Application

15       The pending Nevada suit is a claim by Hologram USA (and other parties not named in

16  this action) that Pulse (and other parties not named in this action) infringed on plaintiffs' patents

17  in creating and projecting the Michael Jackson Animation. (Defs.' Mot. to Dismiss, 19). While

18  the Nevada lawsuit and the instant action both relate to the Michael Jackson Animation, they do

19  not share the same operative facts. The Nevada suit relates to patent infringement occurring

20  before and during the Billboard awards. The instant suit relates to alleged representations made

21  in an interview taped and aired after the Billboard awards. The instant suit does not depend on

22  issues of patent ownership, licensing, or use. Similarly, the patent infringement allegations in

23  the Nevada suit do not depend on whether Defendants made false designations of origin, the

24  materiality of Defendants' misrepresentations, or other related issues posed by this action.

25       For the aforementioned reasons, Pulse's claims are not compulsory counterclaims in the

26  Nevada lawsuit and thus may properly be brought before this court.

27

28

**IV.    ORDER**

      1.  For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

      2.  Because the Court cannot say that amendment would be futile, the complaint is DISMISSED WITHOUT prejudice.  Pulse shall have leave to file an amended complaint.

      **IT IS SO ORDERED.**

Dated: September 17, 2014

_____
STEPHEN V. WILSON
United States District Judge